**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**PEDRAM GHAFOURIFAR,**

    **Plaintiff,**

**v.**                                    **Case No.:    3:14-cv-01501**

**COMMUNITY TRUST BANK, INC.,**

    **Defendant.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

On December 12, 2013, Plaintiff Pedram Ghafourifar (Plaintiff) filed a *pro se* complaint alleging eight claims against Defendant Community Trust Bank, Inc., (Defendant) in Cabell County Circuit Court. (ECF No. 1-1). Defendant then filed a notice of removal to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441. (ECF No. 1 at 4). Currently pending before the Court are Defendant's Motion to Dismiss Counts I, IV, V, VI, VII and VIII, (ECF No. 3), and Defendant's Motion to Dismiss or Alternatively Motion for Summary Judgment, (ECF No. 4). Plaintiff has filed a response in opposition to both motions, (ECF No. 7), and Defendant has filed a reply. (ECF No. 11). After the initial status conference was held, the undersigned allowed both parties to conduct limited discovery and submit supplemental briefs in support of their positions, (ECF No. 18 at 1-2), and both parties did so. (ECF No. 38; ECF No. 39). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed

findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the materials supplied by the parties and finds the issues to be clear. Accordingly, oral argument is not necessary for resolution of the motions. For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Counts I, IV, V, VI, VII and VIII, (ECF No. 3), be **GRANTED**; Defendant's Motion to Dismiss or Alternatively Motion for Summary Judgment, (ECF No. 4), be **GRANTED**; Plaintiff's complaint be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court.

## I.    <u>Relevant Facts</u>

Plaintiff, as a managing member of Tri-State C-P System, LLC, (Tri-State) obtained a commercial loan on behalf of Tri-State from Defendant in 2009. (ECF No. 1-1 at 5; ECF No. 39-3 at 10). Plaintiff personally guaranteed the $950,000 loan and used his home as collateral to secure the loan. (ECF No. 1-1 at 5). The unconditional guarantee signed by Plaintiff stated that Defendant could "at any time, without notice, without [Plaintiff's consent], . . . [s]ubstitute or release any of the Collateral, whether or not [Defendant] receive[d] anything in return." (ECF No. 39-7 at 2). The loan was also secured by a $150,000 certificate of deposit (CD) supplied by Kevin Severson, who held a fifteen-percent ownership interest in Tri-State. (*Id.*; ECF No. 39-6 at 6-7). In order to grant Defendant a security interest in the CD, Mr. Severson executed a hypothecation agreement. (ECF No. 11-2 at 1-2). The hypothecation agreement set forth both Mr. Severson's and Defendant's rights and responsibilities as to the CD. (*Id.*) Mr. Severson was required to grant Defendant a security interest in the CD, and in return, Defendant was to "exercise reasonable care in the custody and preservation of the CD." (*Id.* at 1).

In 2011, Plaintiff asked Defendant to modify the loan agreement in order to reduce the monthly loan payment that Tri-State was required to make. (ECF No. 1-1 at 7). In response, Defendant had Wesley Agee, an attorney from Jenkins Fenstermaker, PLLC, revise the loan documents to provide for a lower monthly payment. (*Id.*) According to Plaintiff, Defendant and Mr. Agee represented to him that the loan documents were the same as those signed in 2009 except for some revised dates and the monthly-payment reduction. (*Id.*) However, Plaintiff alleges that the loan documents actually were "significantly different."[1] (*Id.*) Ultimately, Plaintiff signed the revised loan documents in late 2011 after a correction to a venue provision was made by Mr. Agee. (ECF No. 7 at 5; ECF No. 7-1 at 10; ECF No. 39-1 at 6; ECF No. 39-4 at 2).

In November 2012, a teller at Defendant's Pikeville branch mistakenly released the CD to Mr. Severson, after Mr. Severson allegedly made fraudulent representations to the teller about the propriety of releasing the CD. (ECF No. 39-6 at 10). The erroneous release of the CD was not discovered until March 2013, and at that point, Defendant demanded that Mr. Severson return the CD as required by the terms of the hypothecation agreement. (*Id.* at 11). Mr. Severson refused, and Defendant brought suit to recover the CD in this Court. (*Id.*) That suit was later dismissed by presiding District Judge for lack of personal jurisdiction. *Community Trust Bank, Inc. v. Severson*, No. 3:14-7168, 2014 WL 3700482, at *1 (S.D.W.Va. July 17, 2014).

In July 2013, Tri-State was forced to close. (ECF No. 1-1 at 5). Both Tri-State and Plaintiff filed for bankruptcy that same month. (*Id.* at 6). Defendant asserted claims in both bankruptcy actions. (ECF No. 3 at 2). Defendant then sought to take Plaintiff's

---

[1] Defendant asserts that an inadvertent change was made to the venue provision contained in the loan documents. (ECF No. 39 at 5). A May 25, 2012, e-mail from Defendant's Vice President of Commercial Lending at the Ashland Branch to Plaintiff states that the loan terms that were "accidently" changed between the two versions were fixed before Plaintiff signed the updated documents. (ECF No. 7-1 at 12).

deposition in relation to the Tri-State bankruptcy action. (ECF No. 1-1 at 6). After a process server hired by Defendant attempted a number of times to serve Plaintiff with a deposition subpoena at his home address and was unsuccessful, Defendant's attorney in the Tri-State bankruptcy action filed a motion to compel in November 2013.[2] (ECF No. 7-1 at 31-34). In that motion, Defendant's counsel asserted that Plaintiff seemed to be "evading service" and ignoring the bankruptcy court's order that granting Defendant leave to take Plaintiff's deposition. (*Id.* at 34). Plaintiff maintains that he did not receive the motion to compel because Defendant's attorney sent it to the wrong address. Instead of sending it to Plaintiff's home address, the attorney mailed the documents to Tri-State's business address, which was vacant, and to Beverly McGhee, another former owner of Tri-State. (ECF No. 1-1 at 11; ECF No. 7 at 8-9).

In August 2013, as a result of Tri-State's default on the commercial loan, Defendant asked a residential appraiser to conduct an exterior-Only appraisal of Plaintiff's home. (ECF No. 39 at 3; ECF No. 39-8 at 1). According to Plaintiff, when the appraisal was performed, the appraiser entered onto his property and took photographs of the property without permission. (ECF No. 1-1 at 15). Defendant has supplied an affidavit from the appraiser wherein he attests that he never entered Plaintiff's home or property when conducting the appraisal and only took photographs of the exterior of the home. (ECF No. 39-8 at 2).

---

[2] According to the process server's affidavit, he attempted to serve Plaintiff at his home on the afternoon of October 28, 2013; the morning and evening of October 29, 2013; the morning and afternooon of October 30, 2013; the morning of October 31, 2013; some unspecified time on November 12, 2013; the evening of November 15, 2013; and the morning of November 16, 2013. (ECF No. 7-1 at 46-49). The process server concluded based on his "general education and experience" that "it was reasonable to conclude either that [Plaintiff] was out of town for an extended period of time or that he may be attempting to evade service between October 28, 2013 and November 16, 2013." (*Id.* at 49).

As of February 21, 2014, Plaintiff's personal bankruptcy action was still pending. (ECF No. 11-3 at 7). By that time, Plaintiff had filed two summaries of schedule, and in both, Plaintiff failed to list his current claims against Defendant as contingent and unliquidated assets. (ECF No. 4-2 at 4; ECF No. 4-3 at 4). No evidence has been presented that Plaintiff's bankruptcy plan has been confirmed by the bankruptcy court or that Plaintiff's debts have been discharged by the court.

## II.   <u>Complaint, Motion to Dismiss, and Motion for Summary Judgment</u>

Plaintiff alleges eight causes of action in his complaint: (1) bad faith; (2) breach of contract; (3) discrimination; (4) negligence; (5) fraud; (6) defamation; (7) trespass; and (8) invasion of privacy. (ECF No. 1-1 at 6-15). Plaintiff's bad faith claim has two components—first, Defendant allegedly acted in bad faith by attempting to unilaterally amend the loan documents, and second, Defendant allegedly acted in bad faith by releasing the CD without Plaintiff's knowledge or consent and after Defendant assured Plaintiff that the CD would not be released. (*Id.* at 6-8). Plaintiff's breach of contract and discrimination claims also relate to the release of the CD. (*Id.* at 9-10). Plaintiff asserts that Defendant breached the loan agreement by releasing the CD and discriminated against him by refusing to also release his real property as collateral. (*Id.* at 9-10).

In his negligence claim, Plaintiff alleges that Defendant acted unreasonably "with respect to sending documents" to him, in apparent reference to the purported failure of Defendant's attorney to send the motion to compel to Plaintiff's home address instead of the vacant Tri-State property and Ms. McGhee. (*Id.* at 11; ECF No. 7 at 8-9). Plaintiff's fraud claim also relates to his deposition in the Tri-State bankruptcy proceedings. He further asserts that Defendant's attorneys provided the bankruptcy court with false information when they alleged in their motion to compel that Plaintiff was evading

service and ignoring the court's deposition order. (*Id.* at 11-13). Plaintiff also claims that Defendant, through its attorneys, committed fraud by informing the bankruptcy court that it tried to serve Plaintiff at his places of business when he never informed Defendant that he had a place of business after Tri-State closed. (*Id.* at 12-13). Plaintiff's related defamation claim contains two components—first, that Defendant made "defaming statements" to the bankruptcy court, and second, that Defendant made "defaming statements to another LLC owner." (*Id.* at 14). Finally, Plaintiff contends that an agent of Defendant (presumably the appraiser) trespassed on his property and invaded his privacy by taking photographs in August 2013. (*Id.* at 14-15).

In response, Defendant has filed a motion to dismiss the bad faith, negligence, fraud, defamation, trespass, and invasion of privacy claims based on the facial insufficiency of the complaint. (ECF No. 3 at 3). First, Defendant asserts that the bad faith claim related to the loan document amendments is barred by the statute of limitations. (*Id.* at 4). Second, Defendant insists that it possessed no duty related to the mailing of documents to Plaintiff, and as such, Plaintiff's negligence claim must fail. (*Id.* at 6). Third, Defendant argues that Plaintiff's fraud and defamation claims must fail because the statements made by Defendant's attorneys in the course of litigation are subject to the litigation privilege prohibiting claims arising from statements made during litigation. (*Id.* at 7). As for the trespass and invasion of privacy counts, Defendant maintains that Plaintiff has not alleged sufficient facts to survive a motion to dismiss. (*Id.* at 9-10).

Defendant has also filed a motion to dismiss, or alternatively a motion for summary judgment on all of Plaintiff's claims. (ECF No. 4). In its supporting brief, Defendant avers that Plaintiff has failed to identify any contractual provision that has

been breached. (ECF No. 5 at 5). In fact, Defendant insists that the unconditional guarantee agreement signed by Plaintiff specifically permits Defendant to release the CD without any notice and without Plaintiff's consent. (*Id.* at 6). Defendant also maintains that Plaintiff's discrimination claim must be dismissed because his complaint fails to indicate that he is a member of a protected class and that he was discriminated based on his membership in that class. (*Id.* at 7). Finally, Defendant argues that the entirety of Plaintiff's complaint is barred by judicial estoppel because Plaintiff failed to list his current cause of action as an unliquidated claim in his summaries of schedule filed with the bankruptcy court. (*Id.* at 8-11).

Plaintiff filed a response to both motions. (ECF No. 7). Both parties were permitted to submit supplemental briefing and did so. (ECF No. 18; ECF No. 38; ECF No. 39).

## III.  **Standard of Review**

Defendant demands dismissal of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

"merely consistent with" a defendant's liability, it "stops short of the line
between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations
omitted). Determining whether a complaint states a facially plausible claim for relief is a
"context-specific task that requires the reviewing court to draw on its judicial experience
and common sense." *Id.* at 679. While the court is required to accept as true the factual
allegations asserted in the complaint, it is not required to accept the legitimacy of "a
legal conclusion that is couched as a factual allegation." *Id.* at 678 (quoting *Bell Atlantic
Corp*, 550 U.S at 555).

Courts are required to liberally construe *pro se* complaints, such as the one filed
in this action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081
(2007). However, even under this less stringent standard, the complaint still must
contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I.
Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite
the pleading "to include claims that were never presented," *Parker v. Champion*, 148
F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small
v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never
squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th
Cir. 1985). A Rule 12(b)(6) motion should be granted only "where the complaint lacks a
cognizable legal theory or sufficient facts to support a cognizable legal theory."
*Hartmann v. Calif. Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting
*Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008)).

"Matters outside of the pleadings are generally not considered in ruling on a Rule
12 motion." *Williams v. Branker,* 462 F. App'x 348, 352 (4th Cir. 2012). If a court

considers matters outside the pleadings, then "the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). In that case, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Here, the undersigned allowed both parties to supplement the record with regard to the dispositive motions filed by Defendant. (ECF No. 18).

Defendant also requests summary judgment on Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56. Summary judgment should be granted if the movant shows, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact is present. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A "material fact" is a fact that might affect the outcome of a party's case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Id.* In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Id.*; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing

*Anderson*, 477 U.S. at 248).

Once the moving party has met its burden, the non-moving party must affirmatively respond with specific evidence "showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984)). Instead, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

When considering a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the court will view the evidence in the light most favorable to the nonmoving party and draw from it all permissible inferences in that party's favor. *Diebold, Inc.*, 369 U.S. at 655; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88.

## IV. <u>Discussion</u>

### A. Bad Faith

<u>1. Unilateral Alteration of the Loan Documents</u>

Plaintiff contends in the first component of his bad faith claim that Defendant acted in bad faith when Defendant, through Mr. Agee, "attempt[ed] to unilaterally chang[e] the terms and conditions of the [l]oan." (ECF No. 1-1 at 8). Defendant responds that the one-year statute of limitations for bad faith claims bars Plaintiff's claim because the loan documents that form the basis of his claim were revised in late

2011 and Plaintiff did not file his complaint in state court until December 12, 2013. (ECF No. 3 at 4-5). Plaintiff responds that the "issue of changing the [loan documents] without [his] knowledge continued to exist" until Tri-State closed in 2013. (ECF No. 7 at 5). Plaintiff also asserts that he was too "intimidated" by Defendant to file his complaint until 2013. (*Id.* at 7).

Before addressing Defendant's statute of limitations argument, the undersigned must point out that common law bad faith claims have only been recognized in the insurance litigation context in West Virginia. A review of the approximately thirty decisions from the West Virginia Supreme Court of Appeals discussing common law bad faith claims confirms this finding. As such, Plaintiff has not demonstrated that his bad faith claim is legally cognizable in West Virginia.[3]

---

[3] Even if Plaintiff's claim were recognized in West Virginia, the one-year statute of limitations passed on his claim before he filed his complaint in December 2013. *See Noland v. Virginia Ins. Reciprocal*, 686 S.E.2d 23, 35 (W. Va. 2009)(recognizing one-year statute of limitations applies to common law bad faith claims) (citing W. Va. Code § 55-2-12(c)). Here, Plaintiff's common law bad faith claim arose when Defendant, through Mr. Agee, allegedly attempted to unilaterally alter conditions in the loan documents. Plaintiff signed the revised loan documents in December 2011. (ECF No. 39-1 at 7). Plaintiff must have been aware of any attempt by Mr. Agee to unilaterally alter the documents before he signed them as he states in his complaint that he found that the revised loan documents were "significantly different from those he signed previously," (ECF No. 1-1 at 7), and parties are presumed to have read and understood the contracts that they sign. *New v. GameStop, Inc.*, 753 S.E.2d 62, 76 (W. Va. 2013). Thus, this component of Plaintiff's bad faith claim fails to state a claim for which relief may be granted because the statute of limitations bars his claim. *See United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013) (recognizing that statute of limitations is affirmative defense that may be raised in Rule 12(b)(6) motion). Plaintiff's claim would similarly fail the summary judgment standard because the e-mails that Plaintiff attached to his response brief sink his claim. As early as May 25, 2012, Plaintiff commented to Kristy Gross, Defendant's Ashland Branch Vice President of Commercial Lending, that Jenkins Fenstermaker, PLLC, attempted to change the loan documents without Plaintiff's consent and that this attempt was "maybe illegal." (ECF No. 7-1 at 9). Plaintiff again stated this allegation in a November 5, 2012 e-mail to Ms. Gross. (*Id.* at 14). Moreover, Plaintiff appears to have known of a potential bad faith claim even earlier in time—in an e-mail sent on December 7, 2011, Plaintiff told Ms. Gross that he had "problems" with the revised loan documents because a provision was changed that was not supposed to be altered. (ECF No. 39-4 at 2). At that point, the attempt to unilaterally change the documents had occurred and Plaintiff knew about it. (ECF No. 7 at 19). As for Plaintiff's argument that he was too "intimidated" to comply with the statute of limitations, he has cited no authority that fear of an opposing party is a ground for tolling the statute of limitations. (*Id.* at 7). Further, the general tone and content of Plaintiff's e-mails with Defendant's representatives fail to demonstrate that Plaintiff felt too intimidated to bring an action for bad faith against Defendant before the statute of limitations passed on his claim.

Although, when liberally construed, Plaintiff's bad faith claim may be more accurately characterized as a claim for breach of the implied covenant of good faith. Still, under West Virginia law, "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim." *Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007); *see also Weber v. Wells Fargo Bank, N.A.*, No. 3-13-CV-158, 2014 WL 198661, at *4 (N.D.W.Va. Jan. 15, 2014) ("a stand-alone bad faith claim . . . is not recognized in West Virginia."); *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 750 (N.D.W.Va. 2012) ("West Virginia does not recognize a stand-alone cause of action for failure to exercise contractual discretion in good faith."); *Powell v. Bank of America, N.A.*, 842 F. Supp. 2d 966, 982 (S.D.W.Va. 2012) (stating West Virginia does not recognize claim for failure to exercise contractual discretion in good faith and such claims "must be predicated on breach of contract"); *Smallwood v. Sovereign Bank, F.S.B.*, No. 3:11-CV-87, 2012 WL 243744, at *8 (N.D.W.Va. Jan. 25, 2012) (same as *Wittenberg*); *Clendenin v. Wells Fargo Bank, N.A.*, No. 2:09-cv-00557, 2009 WL 4263506, at *5 (S.D.W.Va. Nov. 24, 2009) (recognizing that breach of implied covenant of good faith and fair dealing claim "will live or die by [a] breach-of-contract claim."). Thus, the first component of Plaintiff's bad faith claim is unrecognized under West Virginia law unless it is "predicated on breach of contract." *Powell*, 842 F. Supp. 2d at 982.

Even construing Plaintiff's claim as one based on breach of contract, the claim must be dismissed. Plaintiff has not cited any provision of the loan agreement that was breached when Defendant, through Mr. Agee, allegedly attempted to unilaterally alter the loan documents without Plaintiff's knowledge. The only clause in the loan agreement that addresses amendments states that amendments shall only be effective if made in

writing and signed by the party to be bound by the amendment. (ECF No. 39-3 at 9).[4] Attempting to unilaterally alter the loan agreement would not breach this provision. Without a viable breach of contract claim as to the attempted alteration of the agreement, Plaintiff's claim must fail. *See, e.g., Powell*, 842 F. Supp. 2d at 982; *Clendenin*, 2009 WL 4263506, at *5.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for bad faith in relation to the revision of the loan documents.

### 2. Releasing the CD without Plaintiff's Knowledge or Consent

As the second component of his bad faith claim, Plaintiff alleges that Defendant acted in bad faith when it released the CD to Mr. Severson instead of retaining the CD as collateral for the loan. (ECF No. 1-1 at 8). Defendant insists that the unconditional guarantee executed by Plaintiff gave Defendant a contractual right to release the CD without Plaintiff's knowledge or consent. (ECF No. 39 at 7).[5] As such, Defendant asserts that "it cannot constitute bad faith to do something that you are contractually entitled to do." (*Id.*) In response, Plaintiff argues that no contractual right existed to release the CD because Defendant brought suit against Mr. Severson for the CD after its release. (ECF

---

[4] To the extent that the revised loan documents are outside of the scope of the pleadings, the undersigned may consider them in addressing Defendant's motion to dismiss because the documents are "'integral to and explicitly relied on in the complaint,'" (ECF No. 1-1 at 7), and Plaintiff has not challenged their authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

[5] In its motion to dismiss, Defendant asserts that it will seek dismissal of this component of Plaintiff's bad faith claim in its motion for summary judgment. (ECF No. 3 at 5 n.1). However, Defendant's motion and brief in support of summary judgment and reply brief do not specifically address this portion of Plaintiff's bad faith claim, only the breach of contract claim related to the CD. (ECF No. 4; ECF No. 5; ECF No. 11). It was not until Defendant's supplemental brief that Defendant specifically addressed the CD component of Plaintiff's bad faith claim. (ECF No. 39 at 7-8). Because, as discussed below, Plaintiff's bad faith claim related to the CD hinges on Plaintiff's breach of contract claim, summary judgment is still appropriate as to this portion of Plaintiff's bad faith claim.

No. 38 at 7). Plaintiff also avers that releasing the CD changed the terms of the loan by requiring Tri-State or Plaintiff to "guaranty $150,000 more." (*Id.*)

Again, Plaintiff's bad faith claim is better described as a claim for breach of the implied covenant of good faith rather than a claim for common law bad faith. Accordingly, Plaintiff must show that a viable breach of contract claim underlies the bad faith claim. *See, e.g.*, *Powell*, 842 F. Supp. 2d at 982; *Clendenin*, 2009 WL 4263506, at *5. The feasibility of Plaintiff's breach of contract claim related to the release of the CD is discussed in detail below. In short, Plaintiff's breach of contract claim founders because Defendant exercised its discretion as to a contractual right when it released the CD. (ECF No. 39-7 at 2). Thus, Plaintiff's bad faith claim in relation to the release of the CD must fail as well because West Virginia does not recognize a claim for bad faith abuse of contractual discretion. *Powell*, 842 F. Supp. 2d at 982.

For the aforementioned reasons and the reasons stated in the section discussing Plaintiff's breach of contract claim, the undersigned **RECOMMENDS** that the District Court **FIND** that there is no genuine issue of material fact as to the second component of Plaintiff's bad faith claim related to the release of the CD and **GRANT** summary judgment to Defendant as to that component of Plaintiff's bad faith claim.

### B. Breach of Contract

Plaintiff alleges that Defendant breached the loan contract when Defendant released the CD to Mr. Severson without Plaintiff's knowledge or consent.[6] (ECF No. 1-1

---

[6] To the extent that Plaintiff argues a breach of contract claim on behalf of the United States Small Business Administration, which guaranteed some portion of the loan, he lacks standing to do so. (ECF No. 1-1 at 5, 9). Plaintiff also cannot pursue any breach of contract claim on behalf of Tri-State because a member of a limited liability company "may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the limited liability company." *Wasko v. Farley*, 947 A.2d 978, 988 (Conn. App. Ct. 2008). West Virginia law permits derivative actions by members of an LLC, but Plaintiff's current action is not a derivative suit. W. Va. Code § 31B-11-1101.

at 9). Defendant asserts that summary judgment should be granted on this claim because Plaintiff has failed to identify any contractual provision that Defendant has breached, and furthermore, Defendant was contractually authorized to release the CD under the unconditional guarantee agreement executed by Plaintiff. (ECF No. 5 at 5-6). Plaintiff responds that Defendant's release of the CD exposed him to the risk of $150,000 more debt for which he will be liable. (ECF No. 7 at 23). Additionally, Plaintiff contends that Defendant breached the hypothecation agreement when it released the CD. (*Id.* at 24). Plaintiff also questions why Defendant would have filed suit against Mr. Severson over the release of the CD if Defendant had a contractual right to release it. (ECF No. 38 at 8). Defendant replies that the release of the CD did not alter the terms of the loan. (ECF No. 11 at 4). Defendant adds that Plaintiff was not a party to the hypothecation agreement, and therefore, he has no standing to assert any claim under it. (*Id.* at 5).

The unconditional guarantee signed by Plaintiff states that Defendant may at any time, without notice and without Plaintiff's consent, "substitute or release any of the Collateral, whether or not [Defendant] receives anything in return." (ECF No. 39-7 at 2). Collateral is defined in the guarantee as "any property taken as security for payment of the Note or any guarantee of the Note." (*Id.* at 1). The guarantee also provides that Plaintiff "unconditionally guarantees payment to [Defendant] of all amounts owing under the Note." (*Id.*) Given the plain language of the guarantee, Defendant was entitled to release the CD, which was property taken as security for the loan, without providing notice to Plaintiff or obtaining his consent. Any contention that the loan agreement was breached when Defendant's representatives orally informed Plaintiff that the CD would not be released must also fail because the guarantee states that Plaintiff "may not use an

oral statement to contradict or alter the written terms of the Note or th[e] Guarantee."
(*Id.* at 3). Moreover, Plaintiff's argument that the loan terms were altered when the CD was released is unavailing because Plaintiff personally guaranteed the entire amount of the note, and thus, the amount that Plaintiff was potentially liable for repaying, $950,000, never changed.

Additionally, Plaintiff's reliance on the hypothecation agreement is misplaced. First, as Defendant points out, Plaintiff was not a party to the hypothecation agreement; only Mr. Severson signed that agreement. (ECF No. 11-2 at 2). Plaintiff has not asserted any type of third-party beneficiary status that would allow him to raise a claim under the hypothecation agreement, and it is unlikely that Plaintiff was anything more than a possible incidental beneficiary of the hypothecation agreement. *See Pettus v. Olga Coal Co.*, 72 S.E.2d 881, 884 (W. Va. 1952) (describing three types of third-party beneficiaries: donee, creditor, and incidental); *Atlas Powder Co. V. Nelson & Chase & Gilbert Co.*, 20 S.E.2d 890, 895 (W. Va. 1942) (stating incidental beneficiary to agreement cannot bring suit based on agreement). Second, the hypothecation agreement did not require Defendant to retain a security interest in the CD. (ECF No. 11-2 at 2). Instead, the agreement imposed a burden on Mr. Severson to grant Defendant a security interest in the CD. (*Id.* at 1). In contrast to Plaintiff's averment, requiring Mr. Severson to grant Defendant a security interest in the CD and later releasing the CD as a result of Mr. Severson's purported misrepresentations are not logically inconsistent positions. Defendant held the right to release the CD, even inadvertently, without breaching the hypothecation agreement.

For the aforementioned reasons, the undersigned **RECOMMENDS** that the District Court **FIND** that there is no genuine issue of material fact as to Plaintiff's

breach of contract claim and **GRANT** summary judgment to Defendant as to Plaintiff's breach of contract claim.

### C. Discrimination

Plaintiff's discrimination claim also involves the release of the CD. (ECF No. 1-1 at 10). Plaintiff alleges that Defendant discriminated against him by releasing the CD as collateral and not releasing his home as collateral as well. (*Id.*). Defendant requests dismissal of this claim because Plaintiff has not indicated that he was discriminated against based on his status as a member of a protected class. (ECF No. 5 at 7). In the alternative, Defendant seeks summary judgment on the claim because Defendant was exercising a right provided to it under the guarantee when it released the CD to Mr. Severson. (*Id.* at 8). Plaintiff responds by repeating the allegations contained in his complaint and argues that "Defendant . . . has provided no facts to establish that I was not discriminated [against]." (ECF No. 7 at 26-27). Plaintiff also cites two lines from two e-mails purportedly written by Defendant's President that he believes evidence discrimination against him. (ECF No. 38 at 9). In one e-mail, from Defendant's President to Ms. Gross, as quoted by Plaintiff, Defendant's President allegedly stated "you are leading, Kevin in how to get Doctor 'of center.'" (*Id.*) In the second e-mail cited by Plaintiff, Defendant's President allegedly writes, again as quoted by Plaintiff, "you're our star tomorrow!... ("I don't know why they would send a woman to do a man's job" – Dr. Ghafourifar, 2009) Good luck ... Larry." (*Id.*) (ellipses and markings in original). Plaintiff describes these e-mails as "contemptible" of him. Moreover, although Plaintiff is aware that Defendant ultimately sued Mr. Severson over the released CD, Plaintiff takes the position that Defendant "favored" Mr. Severson and "discriminatorily disfavored" Plaintiff. (ECF No. 38 at 8-9).

Nevertheless, as Defendant correctly points out, Plaintiff's complaint fails to allege that he is a member of a protected class, and is the target of discrimination due to his class status.[7] Nor does Plaintiff allege in his discrimination claim any violation of a state or federal, statutory or constitutional provision. As a result, Plaintiff's discrimination claim fails the plausibility standard set forth in *Twombly*, 550 U.S. 544, 570,[8] because he has not alleged a discrimination claim that is legally cognizable. *See Hartmann*, 707 F.3d at 1122. In addition, Plaintiff has failed to produce any evidence creating a genuine issue of material fact as to his discrimination claim. Plaintiff responds to Defendant's motion for summary judgment with speculation and quotes of two lines from two e-mails that are irrelevant to his discrimination claim. Instead of presenting evidence of discrimination, Plaintiff argues that Defendant must prove that it did not discriminate against him. That is insufficient to survive summary judgment. *See Beale*, 769 F.2d at 214.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff fails to state a plausible claim of discrimination. Alternatively, the undersigned **RECOMMENDS** that the District Court **FIND** that there is no genuine issue of material fact as to Plaintiff's discrimination claim and **GRANT** summary judgment to Defendant as to Plaintiff's discrimination claim.

---

[7] A plaintiff may bring an equal protection claim based on his or her status as a "class of one," but such a claim may only be brought against the government or its agents. *See Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

[8] Defendant argued for dismissal of Plaintiff's discrimination claim under Rule 12(b)(6) in its motion to dismiss or alternatively motion for summary judgment. (ECF No. 5 at 7).

### D. Negligence

In his negligence claim, Plaintiff alleges that Defendant acted unreasonably "with respect to sending documents" to him, in apparent reference to the purported failure of Defendant's attorney to send deposition documents to Plaintiff's home instead of the vacant Tri-State property and Ms. McGhee. (ECF No. 1-1 at 11; ECF No. 7 at 8-9). Plaintiff asserts that when Defendant sent deposition documents to the Tri-State property in November 2013, Defendant was aware that Plaintiff could no longer receive mail there because Tri-State had closed in July 2013 and sent the key to the Tri-State property to Defendant. (ECF No. 7 at 8-9). Plaintiff also maintains that Defendant's failure to notify him of his deposition in the Tri-State bankruptcy case placed him in a situation where he did not know what was being told to the bankruptcy court about him and exposed him to sanctions in that court because he was not aware of when his deposition was to occur. (*Id.* at 9). Defendant argues that Plaintiff's negligence claim should be dismissed because Defendant had no legally cognizable duty to mail the documents to Plaintiff's home address and that any deficiency relative to the service of the deposition documents should be addressed by the bankruptcy court. (ECF No. 3 at 6; ECF No. 11 at 7). Moreover, Defendant insists that Plaintiff's negligence claim is "devoid of the necessary factual predicates to meet the plausibility standard of Rule 12(b)(6)." (ECF No. 3 at 6).

"In a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages." *Hersh v. E-T Enter., Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013). "The plaintiff must prove that the defendant owed the plaintiff some duty of care; that by some act or omission the defendant breached that duty; and that the act or omission proximately caused some injury to the plaintiff that is compensable by

damages." *Id.* Whether a duty of care is owed by a defendant to a plaintiff is a question of law for a court to decide. *Id.* at 347 n.35.

While Defendant focuses its motion to dismiss on Plaintiff's failure to assert a legally cognizable duty in his complaint, the undersigned need not reach that issue because Plaintiff has failed to allege any damages resulting from any purported breach of duty in his complaint. *See Hersh*, 752 S.E.2d at 341 (recognizing damages as element of negligence claim). Both reading the specific allegations of negligence and Plaintiff's complaint as a whole, Plaintiff has not set forth any compensable damages that were proximately caused by any breach of duty by Defendant. Plaintiff's negligence claim contains nothing but an allegation of general damages without specifying what damages were caused by Defendant's alleged breach of duty. (ECF No. 1-1 at 11). Without any allegation of damages caused by Defendant's charged negligence, the claim must be dismissed. *See Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 413 (S.D.N.Y. 2013) (granting motion to dismiss where damages were not alleged); *Adamson v. Bachner*, No. 99 Civ. 3741, 2000 WL 702913, at *1 (S.D.N.Y. 2000) (same); *see also Calderon v. Foster*, No. 5:05-cv-00696, 2007 WL 1010383, at *7 (S.D.W.Va. 2007) (granting motion for summary judgment as to negligence claim where Plaintiff failed to prove any damages).

Even looking past the complaint and incorporating the damages arguments in Plaintiff's response brief, (ECF No. 7), Plaintiff's negligence claim still fails to survive Defendant's motion to dismiss. Plaintiff argues in his response brief that he was exposed to possible sanctions by the bankruptcy court as a result of Defendant's alleged negligence. (ECF No. 7 at 9). However, the possibility of a sanction is not a compensable injury for a negligence claim. Furthermore, any possible sanction faced by Plaintiff in

the bankruptcy proceeding is better left addressed by the bankruptcy court. Additionally, Plaintiff's lack of awareness as to what was being told by Defendant to the bankruptcy court is a similarly uncompensable injury for a number of reasons. First, the documents filed were likely a part of the public record, so Plaintiff could have discovered them if he kept abreast of what was transpiring in the Tri-State bankruptcy proceedings. Second, Plaintiff eventually discovered the representations made by Defendant to the bankruptcy court and had an opportunity to correct the record. Finally, any alleged damages caused by the content of Defendant's representations to the bankruptcy court are better addressed as a defamation claim, which Plaintiff has alleged and the undersigned discusses below.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for negligence.

### E. Fraud

Plaintiff insists that Defendant, through its attorneys, committed fraud when it informed the bankruptcy court by affidavit that it had attempted to serve Plaintiff at his "places of business" and stated to the court that Plaintiff "appear[ed] to be evading service of the subpoena" and ignoring the court's order permitting Defendant to take Plaintiff's deposition. (ECF No. 1-1 at 12-13; ECF No. 7 at 14; ECF No. 7-1 at 29-30). Plaintiff alleges that these representations were false and that Defendant made these representations with "the intent to deceive and defraud the [b]ankruptcy [c]ourt." (ECF No. 1-1 at 13). Defendant requests dismissal of Plaintiff's fraud claim under the litigation privilege doctrine. (ECF No. 3 at 7). Defendant maintains that the litigation privilege protects Defendant from being held liable for statements made in a judicial proceeding

and that the statements that form the basis for Plaintiff's fraud claim were made in the course of the bankruptcy proceeding. (*Id.*)

In order to prove fraud, a plaintiff must show "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Kidd v. Mull*, 595 S.E.2d 308, 313 (W. Va. 2004) (quoting *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927)) (enumeration in original).

The litigation privilege provides that "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is . . . privileged and cannot constitute the basis of a civil action." *Barefield v. DPIC Cos., Inc.*, 600 S.E.2d 256, 272 (W. Va. 2004) (Davis, J., concurring) (citing *Jenevein v. Friedman*, 114 S.W.3d 743, 745 (Tex. App. 2003)) (internal markings omitted) (ellipsis in original). The West Virginia Supreme Court of Appeals has recognized that "[t]he litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." Syllabus Point 3, *Clark v. Druckman*, 624 S.E.2d 864, 865 (W. Va. 2005). The litigation privilege extends to "all statements or communications in connection with [a] judicial proceeding . . . as long as the communications are related to the prospective judicial action." *Susko v. City of Weirton*, No. 5:09CV1, 2011 WL 221825, at *3 (N.D.W.Va. 2011) (quoting *Collins v. Red Roof Inns, Inc.*, 566 S.E.2d 595, 599 (W. Va. 2002)). However, the litigation privilege only applies to bar certain claims, and the privilege is not applicable to actions alleging fraud on the part of an opposing party's attorney. *Druckman*, 624

S.E.2d at 872.

While application of the litigation privilege may not necessitate dismissal of Plaintiff's fraud claim, the claim still stumbles on the element of reliance. Plaintiff does not allege in his complaint that he relied on any alleged misrepresentations made by Defendant through its attorneys. Instead, Plaintiff claims that the bankruptcy court relied on misrepresentations made by Defendant. (ECF No. 1-1 at 13). In order for Plaintiff to state a plausible claim for fraud, he must at least allege that he relied on the representations made by Defendant to his detriment. *Bluestone Coal Corp. v. CNX Land Res., Inc.*, No. 1:07-00549, 2007 WL 6641647, at *4 (S.D.W.Va. 2007) ("In West Virginia a plaintiff cannot establish fraud without alleging both justifiable and detrimental reliance on the false representation."); *Kidd*, 595 S.E.2d at 313. Plaintiff has not done so, and thus, his fraud claim must be dismissed.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for fraud.

### F. Defamation

Plaintiff contends that Defendant made "defaming statements" about him to the bankruptcy court and to "another LLC owner." (ECF No. 1-1 at 14). Again, Defendant relies on the litigation privilege for the dismissal of Plaintiff's claim. (ECF No. 3 at 7-8). Additionally, Defendant asserts that the allegation regarding statements to "another LLC owner" lacks the specificity necessary to meet the standard set forth in *Twombly*, 550 U.S. at 555. Plaintiff responds that the litigation privilege should not apply to any statements made to Ms. McGhee because she is not a party to Plaintiff's personal bankruptcy action. (ECF No. 7 at 14).

The litigation privilege, discussed above, applies to defamation claims.[9] *Druckman*, 624 S.E.2d at 873 (holding that litigation privilege generally precludes actions for civil damages except for claims of malicious prosecution and fraud); *Collins*, 566 S.E.2d at 603 (applying litigation privilege to defamation action); *see also Robinson v. Res-Care, Inc.*, No. 2:12-cv-05672, 2012 WL 7947769, at *4 (S.D.W.Va. 2012) (applying litigation privilege to defamation claim), *report and recommendation adopted*, 2013 WL 3558756, at *1. The statements that form the basis of Plaintiff's defamation claim were made during the pendency of Tri-State's bankruptcy proceedings and related to those proceedings. As such, any statements made by Defendant, through counsel, to the bankruptcy court are absolutely privileged and Defendant is immune from suit for those statements. *Druckman*, 624 S.E.2d at 865; *see also Susko*, 2011 WL 221825, at *3.

Moreover, Plaintiff's allegation as to "defaming statements" made to "another LLC owner" is not sufficient to survive a motion to dismiss because the claim does not contain "enough facts to state a claim to relief that is plausible on its face." (ECF No. 1-1 at 14); *Twombly*, 550 U.S. at 570. By this allegation, Plaintiff most likely meant that Defendant sent the motion to compel and the attached affidavit containing allegedly defamatory statements to Ms. McGhee. (ECF No. 7 at 14). However, that claim would beg dismissal as well. Plaintiff has not cited any authority that suggests that mailing a public document related to litigation to a third party impedes the application of the litigation privilege. In the context of pre-litigation statements, the West Virginia Supreme Court of Appeals has noted that some courts have limited the privilege's

---

[9] The elements of a defamation claim are "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syllabus Point 1, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74 (W. Va. 1984) (enumeration in original).

application only to disclosures to "certain interested persons." *Collins*, 566 S.E.2d at 466. Accordingly, statements made to those with an interest in the litigation have been held to fall within the protection of the privilege and statements made to those without an interest in the litigation have held to not be protected by the privilege. *Id.* Here, the statements were made in the Tri-State bankruptcy proceedings to a party with an interest in those proceedings—Ms. McGhee, a fellow owner of Tri-State.[10] Consequently, the litigation privilege applies to bar Plaintiff's defamation claim.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for defamation.

### G. Trespass to Land

Plaintiff insists that on or about August 8, 2013, Defendant's agents entered his property without providing notice to him and trespassed. (ECF No. 1-1 at 14). As support for this claim, Plaintiff asserts in his brief that he received an appraisal containing pictures of his home from Defendant's representative and that the pictures could not have been taken without the photographer entering his property. (ECF No. 7 at 16). Plaintiff inserts photographs into his supplemental brief that he believes prove that Defendant's representative could only take the specific photographs by trespassing. (ECF No. 38 at 13-14). However, the contrast of the photographs is too dark for them to be useful here. Plaintiff also asserts that there is only one road to his home, Wildwood Road, and that he owns "parts" of it. (*Id.* at 13).

---

[10] Plaintiff claims that the motion to compel and the accompanying affidavit were part of the proceedings in his personal bankruptcy action. (ECF No. 7 at 14). However, Plaintiff has not supported this claim with any evidence. To the contrary, the captions on the motion to compel and accompanying affidavit demonstrate that the documents were filed in the Tri-State bankruptcy proceeding. (ECF No. 7-1 at 28, 31).

In response, Defendant argues that the trespass claim must be dismissed because Plaintiff has not alleged that any trespass by Defendant's agent interfered with Plaintiff's possession and use of the property. (ECF No. 11 at 9). As an exhibit to its supplemental brief, Defendant attaches an affidavit from the person who performed the appraisal wherein he states that he neither entered the home nor the property to conduct the appraisal and that all of the photographs for the appraisal were taken from "a location off of the property." (ECF No. 39-8 at 2).

"In West Virginia, common law trespass is 'an entry on another [person's] ground without lawful authority, and doing some damage, however inconsiderable, to his real property.'" *Whiteman v. Chesapeake Applachia, LLC*, 729 F.3d 381, 386 (4th Cir. 2013) (quoting *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945)). Stated another way, "[u]nder West Virginia law, to constitute a trespass, the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011). At common law, damages were presumed from an intentional trespass to land. *See Alpine Forrest Partners v. Crown Cent. Petroleum Corp.*, 134 F.3d 362, 1998 WL 45449, at *4 n.8 (4th Cir. Feb. 6, 1998) (unpublished table decision) (citing a South Carolina case recognizing that nominal damages are presumed for any trespass to land); Restatement (Second) of Torts § 158 (1965) ("One is subject to liability to another for trespass, *irrespective of whether he thereby causes harm to any legally protected interest of the other*, if he *intentionally* . . . enters land in the possession of the other, or causes a thing or a third person to do so . . . .") (emphasis added); *Id.* at § 163 ("One who *intentionally* enters land in the possession of another is subject to liability to the possessor for a trespass,

although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.") (emphasis added).

Defendant cites *Rhodes* in support of its motion to dismiss. In that case, the plaintiffs alleged that the defendant trespassed on their land via chemicals attributable to the defendant that were in the plaintiffs' water supply. *Rhodes*, 636 F.3d at 96. The Fourth Circuit affirmed the district court's grant of summary judgment to the defendant on the plaintiffs' trespass claim because "the plaintiffs failed to produce evidence showing that the presence of [the chemical] in the water supplied to their homes ha[d] damaged or interfered with the plaintiffs' possession and use of their property." *Id.* In its discussion of the plaintiffs' trespass claim, the Fourth Circuit did not discuss the common law principle that a land owner's possession is interfered with when a trespass occurs regardless of damages because the land owner has an interest in excluding others from his or her land. Restatement (Second) of Torts § 163 cmt. d (1965). Instead, the Fourth Circuit stated that the plaintiffs must "establish that the defendant's conduct produced some injury to the plaintiff or to the plaintiff's property." *Rhodes*, 636 F.3d at 93 (citing *Hark*, 34 S.E.2d at 352) (markings omitted).

Here, Plaintiff has not alleged how Defendant's appraiser interfered with his possession and use of his property. (ECF No. 1-1 at 14-15). Nor has Plaintiff alleged how Defendant's appraiser damaged his property. (*Id.*) As such, Plaintiff has failed to allege an essential element of a trespass claim under West Virginia law. *Rhodes*, 636 F.3d at 96. Thus, Plaintiff's claim for trespass cannot withstand Defendant's motion to dismiss. *See Twombly*, 550 U.S. at 570.

For the aforementioned reasons, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for trespass.

### H. Invasion of Privacy

Finally, Plaintiff claims that Defendant's appraiser invaded his privacy by taking photographs of Plaintiff's property without providing notice to Plaintiff. (ECF No. 1-1 at 15). Plaintiff contends that Defendant violated his Fourth Amendment rights by entering his property and taking photographs. (ECF No. 7 at 18). Defendant argues that taking photographs of the exterior of a home cannot constitute an invasion of privacy and points out that pictures of the exteriors of homes are readily available on websites such as Google Earth. (ECF No. 11 at 10). Again, Defendant cites the appraiser's affidavit in support of its motion to dismiss. (ECF No. 39 at 14).

There are four categories of the tort of invasion of privacy: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 83 (W. Va. 1984) (enumeration in original). Plaintiff's claim seems to involve the first category of unreasonable intrusion upon the seclusion of another. "Although there are no reported West Virginia cases that consider the elements required for an intrusion upon seclusion claim in West Virginia, courts have routinely adopted the description of the tort of intrusion upon seclusion set forth in the Restatement (Second) of Torts § 652B."[11] *Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 WL 472433, at *6 (S.D.W.Va. Feb. 19, 2008); *see also Imagine Medispa, LLC v. Transformations, Inc.*, ____ F. Supp. 2d ____, 2014 WL 770810, at *10 (S.D.W.Va. 2014)

---

[11] The statement as to reported cases is still true as of August 2014.

(citing Restatement (Second) of Torts definition of unreasonable intrusion upon seclusion); *Harbolt v. Steel of W. Va., Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W.Va. 2009) (same). The Restatement (Second) of Torts, Section 652B, defines the tort as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

When the Restatement's definition of intrusion upon seclusion is applied to the facts of this case, Plaintiff's claim must be dismissed. First, Plaintiff's reliance on the Fourth Amendment to support his claim is misplaced because the Fourth Amendment to the United States Constitution only protects against state action (or action attributable to the state). *See, e.g., Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007). State action is not present here. Second, Plaintiff has not alleged how Defendant's appraiser intruded upon his private affairs by taking photographs of the exterior of his home. Plaintiff could not have expected to maintain privacy in the exterior of his home, which anyone could see from the street or even by visiting Google Earth. *See Bloomquist v. Albee*, No. Civ.03-276-P-S, 2005 WL 758456, at *5, (D. Me. Mar. 29, 2005) (recommending grant of summary disposition in favor of defendant on invasion of privacy claim where plaintiff did not establish exterior of house was "uniquely private concern"), *report and recommendation adopted*, 2005 WL 1058910, at *1; *Swerdlick v. Koch*, 721 A.2d 849, 857-58 (R.I. 1998) (recognizing that person has no reasonable expectation of privacy with respect to activities outside of residence in location visible to any passerby and collecting cases from other jurisdictions to that effect). Finally, even accepting Plaintiff's allegations as true, his claim would fail as a matter of law because the taking of photographs of the exterior of one's home is not "highly offensive to a

reasonable person," absent some type of special circumstance. Restatement (Second) of Torts § 652B; *see also Bloomquist*, 2005 WL 758456, at *5 ("The image of the exterior of one's house . . . whether you live there with your spouse, your kids, a dog, or a nudist colony, is not alone something that would be highly offensive to a reasonable person.") (markings omitted).

For the aforementioned reasons, the undersigned **RECOMMENDS** that the District Court **FIND** that Plaintiff has failed to state a plausible claim for invasion of privacy.

### I. Judicial Estoppel

Given the undersigned's recommendation that judgment be entered in favor of Defendant on the entirety of Plaintiff's complaint, any discussion of judicial estoppel is gratuitous. However, the undersigned notes that the doctrine of judicial estoppel is not grounds for the entry of summary judgment in favor of Defendant. Defendant asserts that judicial estoppel is appropriate in this case because, as of February 27, 2014, Plaintiff had not amended his bankruptcy summary of schedule to include the claims that are the basis of this action. (ECF No. 11 at 11). Plaintiff responds that he immediately notified his bankruptcy attorney and the bankruptcy trustee when he filed his complaint in this matter. (ECF No. 7 at 30).

Judicial estoppel prevents litigants from "opportunistically changing their position in subsequent proceedings." *Williams v. Basic Contracting Serv., Inc.*, No. 5:09-cv-00049, 2009 WL 3756943, at *2 (S.D.W.Va. Nov. 9, 2009). "There is no 'precise formula or test' for when [judicial estoppel] is applicable." *Id.* (quoting *Zedner v. United States*, 547 U.S. 489, 504, 126 S. Ct. 1976, 164 L.Ed.2d 749 (2006)). However, judicial estoppel is only appropriate where a party acts in bad faith. *Id.* When a litigant

fails to disclose an unliquidated claim in the course of bankruptcy proceedings, bad faith may be presumed if "the litigant had both knowledge of the claim and a motive to conceal it." *Id.* "Provided that bad faith is evident, there are a number of other factors that are generally considered by courts when determining whether to apply judicial estoppel, including (1) whether the party's position is clearly inconsistent with its prior position; (2) whether a court has accepted the party's prior position; (3) whether the position was one of fact or law; and (4) whether the party taking the inconsistent position would gain an unfair advantage or impose an unfair detriment from such conduct." *Id.* at *3.

While Plaintiff may be presumed to have acted in bad faith by taking an inconsistent position between his claims here and his assertion that he had no unliquidated claims in his bankruptcy action, Defendant has not shown that the bankruptcy court has accepted Plaintiff's inconsistent position, which is an important factor in the judicial estoppel analysis. Defendant has failed to cite any case where the mere filing of a summary of schedule constituted the bankruptcy court's adoption of that party's position. In fact, case law points to the contrary. *See In re Family Dollar FLSA Litigation*, No. 3:08 MD 1932, 2009 WL 1750908, at *2 n.3 (M.D.N.C. June 19, 2009) (noting litigant not barred by judicial estoppel where litigant's debt was not discharged by bankruptcy court and bankruptcy court had not approved litigant's plan); *cf. Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) (recognizing discharge of debt by bankruptcy court is sufficient acceptance by court of litigant's position to apply judicial estoppel); *Casto v. American Union Boiler Co. of W. Va.*, No. 2:05-CV-00757, 2006 WL 660458 at *3 (S.D.W.Va. Mar. 14, 2006) (holding bankruptcy court adopted litigant's inconsistent position where bankruptcy court relied on litigant's

representations in discharging litigant's debts); *Calafiore v. Werner Enter., Inc.*, 418 F. Supp. 2d 795, 797-98 (D. Md. 2006) (same). Because Defendant cannot show that any alleged inconsistent position has been adopted by the bankruptcy court in Plaintiff's personal bankruptcy action, Defendant's position as to judicial estoppel is unconvincing.

## V.     <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendant's Motion to Dismiss Counts I, IV, V, VI, VII and VIII, (ECF No. 3), be **GRANTED**; Defendant's Motion to Dismiss or Alternatively Motion for Summary Judgment, (ECF No. 4). be **GRANTED**; Plaintiff's complaint be **DISMISSED**, with prejudice; and that this action be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court

of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** August 27, 2014

Cheryl A. Eifert
United States Magistrate Judge